All right. Good morning. Before we start the time here, let me just get the party straight before we start. Okay. Your name is? My name is Robert Freitas, and I represent Seagate. Okay. And so you are the only one on your side? Yes, Your Honor. But you are listed as a defendant counterclaimant appellant slash appellee? That's right, Your Honor. Okay. Which means you have 20 minutes total, and it's only you that's going to be arguing? Yes, Your Honor. Okay. So you will be taking up the cross appeal in your opening, or are you going to wait for them to talk about it? I was planning to address it, Your Honor, and reserve five minutes for rebuttal. Okay. That makes sense. And after, if at the end of it, if any of my panelists have any questions, because since we've got the appeal and the cross appeal, I will allow them leeway to ask either side any additional questions. We want to make sure that the panel's questions are answered. Okay. Now we can start the time. Thank you. Thank you, Your Honor. May it please the Court. Under long-settled California Supreme Court case law, which has been applied by this Court in many cases, including the Hyundai case in 2010, it's established that an insurer is obligated to provide a defense whenever the allegations of a complaint or the facts that are inferrable or known present the potential that the policyholder will face a covered liability. Is that true as to a secondary insurer? Do you mean an excess insurer, Your Honor? Correct. It is when the insurer is obligated to defend. Well, even if they're obligated to defend, if they're secondary, they're excess, do they really have a duty to defend until the primary have done all the defense they need to do? Generally, no. But in this case, no issue on that score was raised until reconsideration. And an issue raised for the first time on reconsideration isn't preserved. AIU did not make that argument initially. And in this Court, AIU advocates that the issue is preserved solely on the basis of its reconsideration argument. And therefore, lost. Correct, Your Honor. All right. That's why I wanted to make sure that was your argument. Yes, Your Honor. Take that up with AIU, I guess. So the duty to defend exists when the facts that are alleged, inferable, or otherwise known suggest a potential for a covered loss. And the way the courts talk about that, they say if there's a bare potential or possibility that a covered loss could ensue, there's a duty to defend. Indeed, as the Cal Supreme Court said in the Scottsdale case in 2005, and as this Court said in Hyundai, even when it's the case that the complaint could fairly be amended based on those facts, a duty still exists. Well, let me ask you this, because, all right, initially, this case is essentially a little bit on round two, right? Yes, Your Honor. That it did — it came up to this Court previously with another panel, and there was construed as to one insurance company the duty to defend, and now I think the other company is going to claim that that has no bearing on them. But we'll wait and hear about that. But that being said, now we're — this case started when? About 2000. Okay. So it's been going on — The underlying case. Yes. It's been going on some time. Then there was — then there was a situation, then it came here, then it went back, and there was the duty to defend. Now, at some point, Convolve opposed the insurer's motion to intervene in the underlying action, and it said that there is no claim for disparagement, and the Court, at that end — and apparently the duty to defend has been hooked to some extent on the fact that there's a possible claim for disparagement. Now, Convolve has said that there's no — that there is no disparagement claim. What district court would ever, in their right mind, allow them to amend a complaint later and say that there is a disparagement claim? And does that have to be a possibility in order for this duty to defend to continue? Well, Your Honor, first of all, let me say that the way it works is that there is a duty until the possibility is conclusively refuted. Well, why wasn't that possibility — why wasn't that RIP rest in peace when they said, no, there is no disparagement claim? We're not going to — you know, we're not claiming that. There are two important points there, Your Honor. And how far along in the litigation was that? It was in 2007, if I recall. Okay. So seven years after it started. That's right. But there's two important things to focus on there. The first one is the difference between a formally pleaded claim and allegations that present the potential for coverage. In this case, the duty to defend was triggered, according to the ruling of the district court and the panel of this Court, on the basis of allegations rather than a formal claim. So in the first instance, the comment by Convolve that there isn't a formally pleaded claim isn't even relevant. It doesn't address the reason why there's a duty to defend. But secondarily — So, I mean, you're just basically saying the duty to defend goes on forever until the lawsuit's over. No. What we're saying is what the California Supreme Court has said. The duty to defend persists until the potential is conclusively refuted. That is the legal standard. Conclusive refutation. And the reason why the statement by Convolve is not a conclusive refutation has several parts. First, all Convolve said was that the preemption summary judgment order, as a consequence of that, no claims would be asserted. Well, that's not even true. The preemption summary judgment order did not address the allegations that triggered the duty to defend. The statement Convolve made was a misstatement of the effect of the preemption ruling. It was not anything other than that. And it must be read that way under the rules that require doubt to be resolved in favor of the policyholder. Now, the — the conclusive refutation standard, admittedly, Judge Callahan, is a very high standard. It doesn't mean the duty goes on forever. But it certainly does mean that the insurers must meet a very, very high standard. It's clear in the case law that the duty to defend continues once triggered until that high bar is met. So what would have had to have happened in the underlying action to destroy the duty to defend in your argument more than what happened? Well, what happened didn't have any impact. I understand your argument that it didn't have any effect. But when a counsel gets up and says, we're not bringing such a claim, and makes that representation to the court, I'm trying to figure out what more would you want to have happened in order to have eliminated the duty to defend. First of all, Your Honor, let me reiterate that the statement the lawyer made did not address the allegations that matter. What the lawyer said is that as a consequence of a prior court order. Answer my question. Don't rehash your old argument. What would have had to happen in your opinion in order to eliminate the duty to defend on that disparagement claim over and above what happened? What we've said, Your Honor, is that the allegations would have had to be removed from the case. So they'd have to bring summary judgment on those allegations? They could be withdrawn. They could be eliminated for some other reason. Usually, Your Honor, the way this would come up would be at the time of the pretrial order. At the pretrial order, what would happen would be the district court would issue an order specifying the issues for trial, and in the issues for trial, the disparagement allegations would rise or fall. It's most likely in a situation like this one that that is the point at which mechanically the issues would drop out if they ever were going to drop out. Well, the problem comes, I guess, when you're thinking about the duty of the defense counsel in the underlying case who's being paid by the insurance company to defend. It wouldn't be in their best interest to bring a motion for summary judgment, because, of course, then they'd be operating against the best interests of their insurance company. So the only way, really, is to look at what really happened in the case. And that's why your argument is of some concern, because defense counsel isn't going to bring a motion for summary judgment. Defense counsel probably isn't going to say anything at the pretrial conference, because anything defense counsel does to get rid of this claim, it is eliminating his duty to be there and defend his clients. So he's going to leave it out there. And so that's why Judge Callahan is focusing on these arguments, because counsel wouldn't have any real reason to bring these things. And we then, in a vacuum, cannot eliminate that problem. Well, Your Honor, I think there's two points there. The first is, at the pretrial order stage, it would be the plaintiff's lawyer who would be making the election in the first instance. The defense lawyer couldn't insist that the plaintiff's lawyer would go forward with the allegations. But the context that this happened in was more than just a lawyer making a representation in court. It was a lawyer making that representation to gain tactical advantage, essentially to keep the insurance company out, to keep the insurance company from coming in on an intervention motion. Right? That was the context, Your Honor. Yeah. It was the plaintiffs making an argument. And they made a lot of other arguments, too. That wasn't the only argument they made. And they prevailed, right? They did. But there's no reason to believe they prevailed on this point. We've addressed that in our brief. There were a multitude of arguments that were made by the plaintiffs to keep the insurers out. The order by Judge Daniels in the Southern District of New York was unexplained. He simply said, deny. He did not adopt this argument. And there's no basis in the record for a conclusion that he did. One other point. Well, I'm just trying to put myself in the position of the district judge having been a trial judge. And if some lawyer made that representation to me to keep someone out of a case, and then later when it was time to instruct the jury that they wanted to amend their complaint to conform to proof or they wanted instructions on disparagement, they wouldn't be getting them from me because the other side would be prejudiced based on that they had taken a contrary position upon which someone had relied. I mean, and that's, you know, that's what you look at under, if the other side would be prejudiced, you know, I think it would be an abuse of discretion to allow that sort of amendment to conform to proof or to allow instructions on something that they specifically said they weren't alleging. But this takes us back to the fact that an exercise of discretion is required. And that exercise of discretion didn't take place. These events the Court, Your Honor, has just described didn't happen. I think we have your argument in mind. I know you want to save five minutes for rebuttal, but what about the bad faith here? I'm troubled by that in the sense that if this is a close issue and different judges have seen it differently, why wasn't the district court right in saying, you know, this is not the type of case where you can show bad faith? Well, it's not a close case, Your Honor. The allegations quite clearly trigger the duty to defend. That's what was held by the district court and that's what was held by the prior panel. Well, the district court only held it after the Ninth Circuit told them to hold it, right? Yes, Your Honor. So the district court didn't see it, you know. That's true, Your Honor. But at the same time, the items that the district court cited to establish the alleged closeness of the case, each of them, as we've explained in our brief, is improper. The court pointed to the absence of a formal claim, to the alleged paucity of evidence, all factors that have no bearing on whether there's a defense duty. The defense duty exists regardless of whether the claims are true. The defense duty exists even though a formal claim is not alleged. These factors cited by the district court are not proper. Okay. So what allegations have you made, if any, to support your claim for bad faith? I'm part of the insurer. The allegations that we've made are the allegations that are required under the case law that unreasonable behavior took place. And unreasonable behavior took place because, under what we've alleged, there is a duty to defend and there isn't a reasonable basis for saying that there's not. The bases articulated by the district court don't count. They can't be considered. It doesn't matter that there's not a formal claim. It doesn't matter that there isn't evidence, if that's the case. Counsel, let me tell you what's troubling me here. It looks like the plaintiff's lawyer said, we're not going to rely on the allegations in the complaint. Aren't they bound by that? And isn't that a judicial admission that there is no cause of action that they're pursuing? It isn't, Your Honor, until Judge Daniels in New York says that it is. And, again, I want to go back to the point, that's not quite what they said. What they said is, as a result of the preemption ruling, they didn't say, we're not going to rely. They said, under your order, we can't. And under the Supreme Court's opinion in New Hampshire v. Maine, for example, when there's an inaccurate comment on a legal order, the Court has discretion to relieve a party, even when a true representation has been made. There was one other point I wanted to answer in response to Judge Smith, having to do with the problems defense counsel might have. These issues are largely addressed by the Coumas rule in California or the Peppers rule in Illinois, where when there is a conflict, and, Your Honor, hypothesize a situation where there could be. In that situation, the policyholder gets to pick the lawyer. So the conflict for defense counsel is not there. The lawyer represents the policyholder only, and he or she would decide how to advocate with only the policyholder's interests in mind. Now, in this case, the insurers didn't defend until well into the case. I'd like to address a couple of other points quickly. Yes, I understand, Your Honor. That's fine. With respect to the interest calculation, an issue was raised by ASIC regarding the write-offs. There were 48 bills. Four of them had write-offs. And the total amount of the write-offs was $6,327.15. No issue was raised about the write-offs in the district court. None was raised in the opening brief in this court. And it's simple to look at the calculations and use the date of the write-offs, and only an insubstantial reduction would occur. We calculated it, $18,435.54.   It doesn't make sense. But I'll reserve the rest of my time. All right. Thank you. May it please the Court, Barbara Michelides on behalf of National Union. All right. Before we start running the time, tell me how you're going to divide your time. I'm going to take 15. Mr. Robinson is going to take 5. And then you have no rebuttal. Oh, I was unaware we could even reserve rebuttal as a cross-appeal. How are you? They're cross-claimants. Yeah. So on that one, you're okay. I think we're okay. We'll do 15.5. All right. Forever hold your peace. I'd like to start initially with our cross-appeal, and that is our request that this court revisit the declaration that there was a defense obligation owed in the first place. Certainly, I think our briefs do a sufficient job of setting out the actual language of paragraph 61 or 65 and the case law, including total call, clear logic, microtech. And there just simply is no allegation of disparagement that would support a finding that the complaint itself triggered a defense obligation by anybody. The hallmark of a trade libel claim is the publication to third parties of a false statement about the plaintiff's goods, products, or services, or the plaintiff itself, the underlying plaintiff. In this case, that would be Convolve. There is no way you can read paragraph 61 as saying anything disparaging or derogatory about Convolve. The complaint allegation is that Seagate was making statements about its own products, Seagate's products, touting that it had an ability that Convolve complained it had stolen from them. Well, just a minute. As I read it, it says Seagate is claiming that its technology performs the same functions as Convolve's. Yes, its performance. The same functions. Well, plaintiffs are suggesting that Seagate is absolutely out to lunch. Seagate's technology doesn't do the same. It doesn't even do near. Their own technology is superior. And so Seagate is therefore disparaging Convolve's technology by saying they do even close to Convolve. But they didn't say, nothing said that Seagate said we do the same as Convolve. But even if they had, I think that still is not disparaging. What they have to say is that Convolve's product is somehow deficient, defective, or of a lower standard. Not that they are the same or as good as. Well, it's certainly implied. It's certainly implied. So that's the problem that I have there. There's an implication of that. Well, didn't we have a former panel of ours who suggested that that? Well, we did have. There was a prior appeal. That that was pretty good stuff and that you better go back and think about it? Well, I think, actually, if you read the former opinions, the former panel's opinion, it's clear that the panel cited both the allegation in the complaint and the supplemental interrogatory response, and then cited the rule that you can go outside the complaint to find a defense obligation. We read that as a clear indication that the panel did not believe that the complaint allegation alone was sufficient to trigger a defense obligation because there would be no reason to go then beyond and look at the interrogatory answer. Well, that's a pretty narrow reading of that mem dispo. Well, I think there's a lot of confusion about what really – first of all, that issue was not squarely briefed or addressed in the prior appeal. The prior appeal really focused exclusively upon the impact of the exclusion. But that's the – Well, it seems to me, though, that that mem dispo can be reasonably read to hold that the duty to defend arose with the filing of the underlying complaint. Well, I think you can read it either way. I think you can say they certainly cite the complaint, they cite the interrogatory. I think that's what led to the confusion. Our district court here read this complaint allegation and said it doesn't trigger anything. He relied on the interrogatory response. And then after the opinion came down, changed his mind and said – Well, of course, because we're higher. Right. I get that. We may not be right, but we're higher. I do think, though, if you really do take a careful read of the complaint allegation and the case law that we've cited, this amounts to nothing close to a disparagement claim or a trade libel claim. Are you saying that the law of the case doctrine doesn't apply to the prior decision of the panel that wrote the opinion? Yes, certainly not with respect to National Union and AIU. They were not parties to that appeal, so I do not believe that they would be bound by that under the law of the case doctrine. We briefed that in our brief, and I think Seagate doesn't even attempt to argue that we would be. We're just simply not parties to that prior appeal, so that anything with respect to that decision should not be binding on either AIU or National Union. And supposing we buy your argument that the complaint itself did not potentially create liability, then what about the interrogatory? Well, the interrogatory, we concede, is a different issue in the sense that they do use the word disparaging. Coupled with that, however, are no facts, and the defense obligation under California law as well settled has to turn on the facts alleged, and there's just no supporting facts that would support that. Well, you know, part of the problem is lawyers, all right? And we have that when we have this motion to intervene, and then we have Convo making a representation that there is no disparagement claim. But, you know, I've been around long enough to know that people say one thing one day, and then later, during the trial, then they say, oh, we want to amend this to conform to proof, or we need to have instructions on disparagement, and then the district court is in a position to have to decide would anyone be prejudiced. So why wouldn't the better decision just be to say, well, they said that at one   And there's no purpose there. But the language still does, it has to be very broadly construed. Why wouldn't it make better sense just to extend the duty to defend until after the case is resolved, and then you deal with there may be no duty to indemnify. At that point, we know whether what the jury would have found. Well, California law states clearly that you can terminate a defense obligation. We cited quite a few cases in our brief where a termination is discussed, and the type of evidence that the courts can rely upon to hold that termination is proper. I think here our district court absolutely had probably some of the best statements you're ever going to get out of anybody that would support termination. You have the underlying plaintiff stating in the context of the insurers attempting to intervene for the sole purpose of determining whether or not there was any factual support for a covered claim, because the majority of the materials in the underlying case are filed under seal, so they're not readily available. You've got the underlying plaintiff, who is steering that litigation, stating definitively there is no disparagement claim, we are not pursuing that claim, they face no potential liability here. We are making affirmative representations to the court to disallow the participation of the insurers for the sole purpose of determining whether or not there is any potential liability from saying there is no potential liability. I agree with you on the prior questions to my opposing counsel. I don't see any court ever then allowing a plaintiff to amend their claim to bring a potentially covered claim at that late date. That was at least six or seven years into the litigation. And if you look at the cases that have talked about termination, Ringler talked about the absence of facts through discovery, depositions. Flint, it was a concession by one of the parties that the car was stolen. I think courts are fully capable and it's within their province to take the statements made here in the underlying case and say this definitively ends the potential for liability and terminates the defense obligation. What is my best California case which would suggest that liability or the duty to defend should be terminated in this particular case? I think you can look at a few of them. I mean the best one. The best. Because I'll be fair. I'm an Idaho lawyer. And we have a pretty good Supreme Court on insurance defense stuff. But if they look at California law, we lose every time. So I look for the best California case because, in general, the California Supreme Court seems and the California Court of Appeals, not to disparage my colleague's former employment, seem to be just putting insurance companies in the suit, whatever they have to do, get them in there and keep them there. And so I look for the best case for you because the law is definitely laid out, but how they interpret the law does not seem to help insurance companies. And so, therefore, I'm trying to find the best case for what you're arguing and find it because we really do have a counsel's argument to keep insurance companies out of the underlying case where counsel is suggesting things that are pretty dang good for the insurance company to think about, but they never do, as plaintiffs have suggested, never do actually say disparagement is out the door. So I'm trying to get the best case to analogize to so that I can give you the relief you want or I've got to give the relief the other way. Because, in fact, the insurer and those who are in the insurance industry know that is the one we really try to protect, the insured, not the insurer. Sorry. No, I understand that. I would say if I have to pick two, I'll go with Flint. That's the stolen car where there was a concession that the car was stolen. And I like the very last footnote in Crystal Geyser where the court states that had they obtained a stipulation from the underlying plaintiff that they would not be pursuing the factual allegations that supported the potentially covered claim, that would have been sufficient. And I think here we have both. We have the functional equivalent of a stipulation from the underlying plaintiff in convolve that they would not be pursuing any potentially covered claim if and when that case went to trial. And I just don't see how you get anything closer than a definitive statement that there is no potential liability after that point. So I would point the Court to those two decisions. I'm running out of time. You talk to me about bad faith. Yes, I will. I'd like to just hit a few things. Certainly we do have the argument that there can't be a simultaneous defense obligation for AIU. I know Justice Smith asked a question about that initially. I think the way this case was posited, you have to realize AIU picked up the defense at the time of the interrogatory response. At that point, the initial finding by this district court was that the complaint allegation did not sufficiently legislate liable to trigger any defense obligations relied upon the interrogatory. AIU had picked up the defense. When it went back in reverse, that's when it became a confusion as to whether or not there could be that simultaneous defense obligation. AIU brought that immediately to the Court's attention. I don't think anything was waived. Even if this Court were to disagree, waiver is certainly a limitation on the parties, not the Court. But I think it just doesn't make any sense to declare an excess in a primary, have a simultaneous defense obligation under the policy language before the Court. And as I understand it as well, TIGER Insurance or TICOR, Title Insurance v. Employers, would suggest that that's the same even if the primary will not defend. Yes, absolutely. Yes, there's no drop-down obligation. So moving on to bad faith, the hallmark for bad faith is unreasonableness. And I think that you have to consider whether or not we briefed extensively on whether or not there's really the genuine dispute doctrine. Does it? Doesn't it apply? But I think here what you have is you have multiple courts having a very difficult time resolving whether or not there's a defense obligation owed in the first place, whether or not any of the allegations support a defense obligation. You've got the district court finding initially it didn't. You've got the Ninth Circuit saying it did, and then a change. So I think there is really nothing. And the defense picked up. At the minute that word disparaging popped in into the interrogatory, there was a defense obligation owed. I just don't see how there could be any potential exposure here for bad faith by any of these individuals. So are we just – are basically the facts undisputed here? It's just a question of just take them with all inferences to the plaintiff, then you say that's – that body of facts does not amount to that. It's not sufficient for bad faith. With respect to what happened with the defense obligation, they are absolutely undisputed. I mean, a defense was provided by ARU as soon as the interrogatory answer was tendered. So I think up until that point, you had the district court agreeing with the parties that there hadn't been any obligation before that time. So I think there's clearly at least at a minimum a genuine dispute with respect to that, and you could not say it's unreasonable. Let me ask you a couple of questions. It's my understanding that the duty to defend would amount to a decision to be made upon reading the underlying complaint. I'm having a tough time understanding how the district court came to this decision on bad faith by not looking at the complaint that was underlying, but by looking at the years of litigation that had gone on. It seems to me that that really doesn't exactly help him on a bad faith claim by looking at what happened thereafter. Well, I think what the court was looking at was he was looking at the conduct of the parties throughout the dispute. Well, I understand that. And maybe a duty to defend ended, and maybe then bad faith, the necessary obligation of the insurance company to defend would also have ended. But bad faith, doesn't it really trigger on whether there's a duty to defend? If there's no duty to defend, of course there's no bad faith. But if there was a duty to defend in the first place and the insurance companies did not defend, isn't bad faith a natural consequence of that? Well, I think it's not an automatic consequence. Isn't that then a question of fact? It ought not be on summary judgment? I think in certain cases it can be. I think here where you have ‑‑ I mean, this district court did not believe there was a defense obligation under the complaint, and so saw the first opportunity for a defense to actually be owed under the supplemental interrogatory answer, which is when it was picked up. I'm just going to ‑‑ I'm going to let you answer Judge Smith's questions, and then you'll have five minutes, okay? I don't know that she needs to answer that. No, that's fine. What I want to do is it seems to me that if there is a genuine issue of fact about whether one should defend or not, there cannot be a summary judgment based on bad faith. It seems to me that that leaves bad faith subject to some jury's determination. If you're going to have a genuine issue of fact about whether to defend and you don't defend, how in the devil can you not have a question of fact about whether bad faith arises? What part of bad faith and the elements of it will allow you to get summary judgment in that event? Well, it isn't that ‑‑ there was a genuine dispute as to whether or not there was a potentially covered claim. It was not a genuine dispute as to whether or not there was bad faith. They're completely different. Well, there was a genuine ‑‑ there's a fight about whether you had to defend, and if you don't defend, you're in bad faith. I don't ‑‑ it's not automatic. Every time you make an erroneous or an incorrect ‑‑ Well, given the elements of bad faith, I don't say it automatically says you're in bad faith. What I'm suggesting is tell me why it isn't a question of fact in that instance, therefore summary judgment not appropriate. Well, I don't know what the question of fact would be, quite frankly. The courts in California apply the genuine dispute doctrine and say if there's a genuine dispute as to whether or not coverage is owed, you've behaved reasonably. You can reasonably disagree as to whether or not you owe a defense obligation. That is not the hallmark of unreasonable. Simply if you happen to be ‑‑ end up at the end of the day wrong, that does not mean you've behaved unreasonably. Unreasonableness speaks more to that you failed to investigate, you failed to do your due diligence, you didn't take your responsibility seriously. It does not speak to whether or not you just had an honest disagreement about your obligation. Thank you. Thank you. All right. I'm giving you five minutes. Archie Robinson. I represent ASLIC. ASLIC wrote the technology policy covering Seagate. It had a $5 million limit. ASLIC paid $5 million to Seagate, plus it paid 3.1 million and change for prejudgment interest. Both of those payments were based on the district court's finding that ASLIC's triggered by the complaint in the year 2000 and not by interrogatory number 23 in 2003. And secondly, that prejudgment interest could be calculated on the basis of the bills sent by counsel and not calculated from the date of payment. I'm here to address both of those issues in the few minutes that I have. First, with respect to the question as to whether ASLIC is bound by law of the case that the complaint itself triggered ASLIC's duty to defend, it is not the law of the case for the reason that, Your Honor, the first appeal before this court dealt with the question of whether the exclusion in the technology policy was sufficient to The finding was it was not. The finding was not that the duty to defend was triggered at any particular time. There is language in the opinion that says that there was a potential in paragraph 21 for disparagement liability, therefore a duty to defend, but it also discussed the extrinsic evidence that was before the court by that time in interrogatory number 23 that expressly talked about disparagement. But there is no finding in that first appeal. It was not briefed. And the issue of when the trigger occurred was not decided. Now, I'm here to address the five elements in the allegation in paragraph 21 of the complaint that show that that paragraph standing by itself was not sufficient to trigger the defense. First, performs the same functions in the press release. Performs the same functions says nothing about the quality of the functions or that one is better than another. It just says generically they are the same. A Volkswagen and a Mercedes perform the same function of transporting people on a highway. And unless you say Volkswagen is as good in quality as a Mercedes, you're not really disparaging the Mercedes by saying that they're both automobiles. So without looking at quality and simply saying the function is the same, no disparagement. Number two. Is that a question of law? It the question is always one of potential. Does this allegation create a potential for disparagement liability? We know that disparagement law requires a defamatory false statement about the product or service of another. Saying that they're the same is not disparaging. Moreover, it's not false. Is this a question of law or is this a question for the jury? I believe that the question of whether there is a potential is tested on, first, legally. Does this language muster or does this language come up to the legal requirements of disparagement? If it doesn't, then you can dismiss it as a potential. It's got to have the potential to create liability. There's no testimony that Convolve's, there was no allegation, rather, that Convolve's technology was superior. Notice it's not a fact that is alleged. It says on information and belief. Convolve believes that its technology is better, but is that a belief shared by the market or shared by anybody else? Not stated, and it's not stated as a factual proposition. Importantly, there was a threat that the industry will perceive the two products as identical. A threat means there's a possibility. It hasn't happened yet. Likewise, there's a possibility that the market will not perceive them as identical. So we're dealing in speculation, not a fact. Third, the products are identical. Saying that the products are identical is not disparaging of anything. Finally, there's no damage yet in the allegation. It says there's a threat that there may be harm to the reputation in the future if the computer industry regards the two technologies as identical. That is a statement of something that could happen in the future without any damage alleged. So no false statement about the plaintiff's goods, no disparagement, no damage alleged. All of those reasons are facts why the complaint in 2000 was not the trigger. In 2003, yes, interrogatory, supplemental interrogatory 23 talks about disparagement. Immediately, the payment was made, and defense costs were honored thereafter. I want now quickly to look at. Well, you're already almost a minute over. I'll give you a minute to wrap up. Thank you, Your Honor. On the question of prejudgment interest, the oil base case says it's from the time of payment. And that is consonant with the public policy of the prejudgment interest statute, to make whole somebody who has been damaged and has lost the use of money. They don't even answer. The appellant does not answer the Casinos case, which articulates the policy of the law behind prejudgment interest. Why is it important for us to argue that it has to be payment as opposed to the receipt of invoice? Write-downs is just one part of it. The other part is it may never be paid. It may never have been paid before the policy limits were paid by AISLING. And if it's not paid, and they get not only the payment of the policy limit, but $3 million in interest, that's a windfall. The law should not allow for recovery of windfalls. I'll be happy to respond to any other questions that Your Honors may have of us. Well, there's some, but time is gone. No, if you can, you know, that's your free day. All right. Apparently you may sit down. Thank you. Thank you. I just felt somewhat ill at ease because some of the arguments that Mr. Robinson made, Ms. Mikeleads also made, and we questioned her pretty hard on those particular issues. And I don't want her to feel bad because we just let him pass by. So that was the only reason. Timing is everything in life. He went first. All right. Go ahead. Thank you, Your Honor. I want to return to the idea that for the duty to defend a terminate, there must be a conclusive refutation. There are two basic reasons why nothing conclusive happened. The first is, under the rules applicable in insurance cases, the statement by Convolve must be read as we say it should be read because it can be. And that is that Convolve said nothing more than, made nothing more than an inaccurate assessment of the legal effect of a prior order. That being the case, it isn't a representation. But, and the second reason is, assuming that Convolve made a representation, that representation was not conclusive. As Judge Callahan has pointed out, the mechanics of how something like that would get worked out involve an exercise of discretion by a district judge. It isn't conclusive. It isn't done until the district judge weighs all the facts and exercises his or her discretion. So there's nothing that's conclusive. Back to a point that was alluded to when Ms. McGillitis was arguing. Convolve said one thing one day and something else the other day. Under Rule 56, there's an issue of fact. If we try to take the statement in the brief as a representation, we must contrast that with the other statements Convolve made when Convolve said, we're going to trial on any theory we can. We're going to muster any evidence we can. Issue of fact, no summary judgment, no termination. And, again, things are being said, like the likely result, what one would expect. It may be true about what's likely, but the standard, the legal standard is very clear, conclusive refutation. There is no stipulation. There isn't anything like what happened in the best cases cited by counsel. Now, on the bad faith issue, what we have is a situation where the allegations clearly do satisfy all the requirements to trigger. All right. So but I guess the thing is, are you saying that every time if someone denies the duty to defend, but then they decide to defend, that every time that gives you a triable issue for a jury on bad faith? Not every time, Your Honor. The case law says that whether an insurer has acted reasonably is a question of fact, unless in an extreme case it becomes a question of law. It isn't every case, but it is this one. What we heard just now from Mr. Robinson, he said that paragraph 61 does not contain an allegation that Convolve's technology was superior. Of course it does. It says it using that word. It says that Seagate's technology is inferior. There is clearly, unquestionably, an unfavorable comparison made in paragraph 61 of the complaint. Well, it's clearly when you have to imply it, is that clearly? It doesn't have to be implied, Your Honor. It says it. Well, I have to imply it. Well. So from that standpoint, you've got to convince me. My answer is still the same, because the rule is, and this is just as good a rule as any other. When there's a potential, when there's the bare possibility, there's a duty to defend. The facts must be read in the light most favorable to the policyholder. That's an important rule. When there's doubt, when it isn't crystal clear, but it's there on a reasonable basis, the duty is just as strong as when it's clear and explicit. And in this case, however it might fall short of being explicit, and we submit that it doesn't. The words are there. There's a comparison. There's an allegation of superiority. There's an allegation of inferiority. They said both. They put in superior and inferior, just to make it clear. And that being the case, there's an issue of fact. Why didn't they defend? They didn't present evidence. What a reasonable insurer, in countering those allegations, have defended or not. And in this situation. All right. You're about a minute over, so you need to wrap up. One final point, then, Your Honor. The Filippo case we cited in our response brief, page 24, note 5, that case shows that there's no bad faith exoneration simply because on a prior occasion a different ruling was made. The issue of fact as to the reasonableness of the insurer's behavior is not eliminated by a prior ruling in the insurer's favor. Thank you very much. Thank you. This matter will stand submitted. Thank you, all counsel, for your excellent argument in this matter. And that concludes our calendar. I would thank both counsel in all of the cases in the sense that I don't know if the students were fascinated by the subject matter, but I think that they saw excellent advocacy on the part of lawyers. And I don't say that to everyone that comes before the court. So I, you know, while I don't tell people when they do a bad job, I do tell them when they do a good job. So I want to thank all counsel today for their excellent advocacy. Regarding the students, we're going to conference at this point. And so I would ask that you be back at 11, and then we'll meet with the students. Thank you. The court is adjourned.
judges: Alarcon, Callahan, Smith